UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

SIDLEY AUSTIN LLP
Eamon P. Joyce (*pro hac vice* application forthcoming)
Alexander I. Cohen
787 Seventh Ave.
New York, New York 10019
(212) 839-5300

David H. Hoffman (*pro hac vice* application forthcoming)
Patrick E. Croke (*pro hac vice* application forthcoming)
1 S. Dearborn St.
Chicago, Illinois, 60603
(312) 853-7000

BRESSLER, AMERY & ROSS, P.C.
Michael T. Hensley
Lauren Fenton-Valdivia
325 Columbia Turnpike, Florham Park, NJ 07932
(973) 514-1200

*Attorneys for Defendant,*
*Quest Diagnostics Incorporated*

| | |
|---|---|
| GRANT MORROW on behalf of himself and other persons similarly situated, | : : : : : |
| Plaintiff(s), | : CIVIL ACTION No. _____ |
| v. | : : |
| QUEST DIAGNOSTICS INCORPORATED, JOHN DOES 1-99 (fictitious entities) and XYZ CORPORATIONS 1-99 (fictitious entities), | : : : : : |
| Defendants. | : |

**NOTICE OF REMOVAL**

To:   Clerk, Superior Court of New Jersey
      Middlesex County Courthouse
      56 Paterson St.

New Brunswick, New Jersey 08903

Michael A. Galpert
James A. Barry
Locks Law Firm, LLC,
801 N. King James Highway,
Cherry Hill, New Jersey, 08034

Pursuant to 28 *U.S.C.* §§ 1332(d), 1441, 1446, and 1453, Defendant Quest Diagnostics Incorporated ("Quest"), a business incorporated in Delaware with its principal office located at 3 Giralda Farms, Madison, New Jersey, hereby removes this action with full reservation of all defenses, which had been pending as Docket No. MID-L-7406-16 in the Superior Court of New Jersey, Law Division, Middlesex County, to the United States District Court for the District of New Jersey.  The Complaint in the above-captioned action also names unidentified fictitious entities John Does 1-99 and XYZ Corporations 1-99 as defendants (collectively with Quest, "Defendants").  According to the Complaint, Plaintiff Grant Morrow ("Plaintiff") is a resident of St. Petersburg, Florida.  Defendant states as follows:

1. <u>Complaint</u>.  On December 21, 2016, Plaintiff filed an action against Defendants seeking certification of a nationwide class of "[a]ll persons residing in the United States whose personal information was disclosed in the Data Breach announced by Quest on or about December 12, 2016."  Compl. ¶ 36 (Complaint attached hereto as Exhibit A).  According to the Complaint, the putative class includes "as many as 34,000 individuals." *Id.* ¶ 37.

2. Plaintiff alleges that, on November 28, 2016, an unauthorized third party accessed certain of Plaintiff's and 34,000 other individuals' private information, including "Protected Health Information ('PHI')" and other "Personal Identifying Information ('PII')," that was held on Quest's computer database system, when the unauthorized third party accessed Quest's MyQuest by Care360® internet application.  Compl. ¶¶ 1-2, 6-12.  The Complaint brings six counts on behalf of Plaintiff and the purported class, alleging negligence, breach of contract, breach of implied contract, publication of private facts, unjust enrichment, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*. *Id.* at ¶¶ 48-99.  Plaintiff, on behalf of himself and the purported class of 34,000 other individuals, seeks, *inter alia*: (i) unlimited actual

and compensatory damages; (ii) treble damages; (iii) "restitution and disgorgement of the revenues wrongfully retained as a result of Quest's wrongful conduct"; (iv) costs and attorneys' fees; as well as injunctive and equitable relief (v) "enjoining Quest from engaging in the wrongful conduct complained of [in the Complaint]" and (vi) "compelling Quest to utilize appropriate methods and policies with respect to consumer data, collection, storage, and safety and to disclose with specificity to Class Members the type of Private Health Information and Personal Identifying Information compromised"; and (vii) "other and further relief as this court may deem just and proper." Compl. pp. 28-29.

        3.      <u>Basis for Jurisdiction in this Court Under CAFA</u>.  This Court has jurisdiction over this putative class action under the amendments of the Class Action Fairness Act of 2005 ("CAFA") to 28 *U.S.C.* § 1332 *et seq.* because:  (a) this is a putative class action; (b) the citizenship of at least one putative class member is different from that of at least one defendant; (c) the putative class consists of at least 100 putative class members; and (d) the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs.  *See* 28 *U.S.C.* § 1332(d).

        a.      <u>Class Action</u>.  This action is a class action within the meaning of CAFA.  28 *U.S.C.* § 1332(d)(1)(B) (defining class action to include a "civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action").  Here, this requirement is satisfied because "[t]his action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules."  Compl. ¶ 36.

b.      <u>Minimal Diversity of Citizenship</u>.  CAFA requires only minimal diversity, that is, that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 *U.S.C.* § 1332(d)(2)(A).  Here, this requirement is met because Plaintiff is a citizen of Florida, *see* Compl. ¶ 2 (pleading Florida residence without suggesting that he is domiciled elsewhere); *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) (party's residence, as pleaded here, is prima facie evidence of domicile); *N.J. ex rel. McDonald v. Copperthwaite*, CV-05559 (FLW)(LHG), 2014 U.S. Dist. LEXIS 72414, at *54 n.2 (D. N.J. May 28, 2014) (construing "references to the residence of individuals as their domiciles."); Voter Registration of Grant Morrow (attached as Exhibit B, hereto)[1]; and Defendant Quest is a citizen of Delaware, where it is incorporated, and New Jersey, where it has its principal place of business in Madison, New Jersey, *id.* at ¶ 3; *see* 28 *U.S.C.* § 1332(c)(1) (explaining corporate citizenship); *see also* Compl. ¶ 36 (putative class is nationwide).[2]  That Quest is a New Jersey citizen has no bearing on the propriety of removal under CAFA.  28 *U.S.C.* § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought.").

c.      <u>Number Of Members In The Proposed Plaintiff Class</u>.  CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100.  28 *U.S.C.* § 1332(d)(5)(B).  Plaintiff brings this action on behalf of himself and "as many as 34,000 individuals" "residing in the United States whose personal information was disclosed in the Data Breach announced by Quest on or about December 12, 2016."  Compl. ¶¶ 36, 37.  Plaintiff further alleges that an unauthorized third party accessed the MyQuest by

---

[1] Voter registration is relevant to domicile. *See*, *e.g.*, *Washington v. Hovensa LLC*, 652 F.3d 340, 346 n.3 (3d Cir. 2011); *Schiavone v. Donovan*, No. 08-cv-1157-SDW, 2009 WL 2957315, at *3 (D.N.J. Sept. 15, 2009); *Vail v. Pan Am Corp.*, 752 F. Supp. 648, 658 (D.N.J. 1990).

[2] The Complaint is incorrect that Quest operates a laboratory location in Middlesex County.  *See* Compl. ¶ 3.

5

Care360® internet application and obtained Protected Health Information (PHI) of "approximately 34,000 patients." Compl. ¶ 12. Accordingly, the requirement that the number of members in the putative class be 100 or more is plainly satisfied. *See* 28 *U.S.C.* § 1332(d)(5)(B).

        d.      <u>Amount-in-Controversy</u>.  Defendant denies liability for any damages and reserves the right to challenge whether Plaintiff has satisfied Article III of the United States Constitution (including due to Plaintiff's failure to show a constitutional injury-in-fact), but the amount in controversy, as demanded by Plaintiff and on behalf of the putative class, plainly meets the jurisdictional minimum requirement of CAFA.  CAFA requires that the "aggregate[]" "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 *U.S.C.* § 1332(d)(2) & (6).  Here, Plaintiff alleges that he seeks compensatory and actual damages, as well as treble damages, on behalf of himself and at least 34,000 other individuals, Compl. pp. 29, and that, as a result of Defendants' actions, he has been forced to enroll in an identity theft protection service at a monthly cost of $14.95.  Compl. ¶ 2; *id.* ¶ 35(g) (seeking on behalf of Plaintiff and the purported class "expenses for mitigating the effects of the Data Breach").  This allegation alone is sufficient to satisfy the $5 million amount in controversy requirement.  In one year, Plaintiff will pay $179.40 for his identity theft protection service.  Aggregated with the other 34,000 purported class members, compensatory damages for the identity theft protection service elected by plaintiff would be over $6 million.  Plaintiff's prayer for treble damages increases that number to over $18 million for only one year of identity theft protection.  *See Hoffman v. Natural Factors Nutritional Prods.*, No. CIV.A. 12-7244 ES, 2013 WL 5467106, at *6 (D.N.J. Sept. 30, 2013) (relying on "the CFA's allowance for treble damages" to hold that it "easily vaults the amount in controversy over CAFA's jurisdictional threshold of $5 million").  And according to Plaintiff, one year of such protection

would not be sufficient, because "Plaintiff and Class Members now face years of constant surveillance of their financial, personal and medical records" and "the Class is incurring and will continue to incur such damages in addition to any fraudulent charges made to their financial accounts or medical insurance, whether or not such charges are ultimately reimbursed by the credit card companies." Compl. ¶ 31.

In addition, Plaintiff further alleges additional damages purportedly caused by, for example, healthcare fraud or the use of PHI or PII to obtain medical services under another's insurance, which Plaintiff alleges costs, on average, $20,000 per incident. *Id.* ¶ 20. Based on this average cost per incident, compensatory damages for such medical fraud would exceed $5 million if 250 of the 34,000 purported class members were victims of medical fraud as a result of the alleged data breach. And if treble damages were awarded, damages would exceed $5 million if 84 of the 34,000 purported class members were victims of medical fraud as a result of the alleged data breach. Plaintiff alleges that 1 in 4 recipients of a data breach notification becomes a victim of identity theft. *Id.* ¶ 27.[3]

In sum, based on Plaintiff's compensatory damages request alone, the amount in controversy plainly exceeds the $5 million statutory requirement—before treble damages or attorneys' fees are considered.[4] *See* 28 *U.S.C.* § 1332(d)(2) & (6). These sums do not take into account the costs associated with the broad injunctive relief requested in the Complaint.

---

[3] In addition, Plaintiff, on behalf of himself and 34,000 purported class members, alleges economic damages and other harm for, *inter alia*, reputational harm, loss of privacy, losses for deprivation of the value of their PII and PHI as defined by the national and international market, and overpayment to Quest for products and services for the portion of the price paid for reasonable and adequate safeguards and security measures that would protect PII and PHI. Compl. ¶ 35. Although Plaintiff does not assign a specific value to such damages, adding such damages to the other relief described above demonstrates that the $5 million amount in controversy is plainly satisfied here, especially when considering that the Complaint seeks treble damages. Moreover, Plaintiff alleges that "the nature and other forms of economic damages and injury may take years to detect." *Id.* ¶ 63.

[4] Plaintiff further seeks unlimited "attorneys' fees" under the New Jersey Consumer Fraud Act. Compl. ¶ 99; *see Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("[A]ttorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action").

4. <u>Consent</u>.  Under CAFA, even if there were any other identified defendants—and there are not—a putative class action such as this "may be removed by any defendant without the consent of all defendants." 28 *U.S.C.* § 1453(b).  In all events, Quest is the only identified defendant.

5. <u>Notice To Plaintiff and State Court</u>.  Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the Superior Court of the New Jersey Law Division, Middlesex County, New Jersey and serve same on all adverse parties, as set forth in the Certificate of Service submitted herewith.  *See* 28 *U.S.C.* § 1446(d).

6. <u>Removal to Proper Court</u>.  Removal to this Court is proper because this Court is part of "the district and division embracing the place where" this action was filed – Middlesex County, New Jersey.  28 *U.S.C.* § 1441(a); 28 *U.S.C.* § 110.

7. <u>Removal is Timely</u>.  This action was filed on December 21, 2016.  Quest was served with the Summons and Complaint on January 13, 2017.  This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and is timely filed within 30 days after service on Quest, in accordance with 28 U.S.C. § 1446.

8. <u>Pleadings and Process</u>.  As required by 28 U.S.C. §1446(a), Defendants have attached as Exhibit A to this Notice of Removal a copy of all process, pleadings, and orders served upon Quest in this action.

9. If any question arises as to the propriety of the removal of this action, Quest respectfully requests the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, Defendant Quest hereby removes this case from the Superior Court of New Jersey, Law Division, Middlesex County, to this United States District Court for the District of New Jersey.

Dated: February 13, 2017

Respectfully submitted,

SIDLEY AUSTIN LLP
Eamon P. Joyce (*pro hac vice* application forthcoming)
Alexander Cohen
787 Seventh Ave.
New York, New York 10019
(212) 839-5300

David H. Hoffman (*pro hac vice* application forthcoming)
Patrick E. Croke (*pro hac vice* application forthcoming)
1 S. Dearborn St.
Chicago, Illinois, 60603
(312) 853-7000


BRESSLER, AMERY & ROSS, P.C.
Michael T. Hensley
Lauren Fenton-Valdivia
325 Columbia Turnpike, Florham Park, NJ 07932
(973) 514-1200

*Attorneys for Defendant,*
*Quest Diagnostics Incorporated*


By:     /s/ Michael T. Hensley

## CERTIFICATE OF SERVICE

      I, Michael T. Hensley, hereby certify that I have on this day, February 13, 2017, caused to be served by mailing FedEx, overnight, a true copy of this Notice of Removal upon Michael A. Galpert, Esq., Locks Law Firm, LLC, and James A. Barry, Esq., Locks Law Firm, LLC, at 801 N. King James Highway, Cherry Hill, New Jersey, 08034.

                                    /s/ Michael T. Hensley
                                      Michael T. Hensley

Dated:  February 13, 2017