# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GRANT MORROW on behalf of himself and other persons similarly situated,** | Civil Action No.: 2:17-cv-0948 (CCC)(JBC) |
| **Plaintiffs(s)** | Civil Action |
| **v.** | **Motion return date:  November 18, 2019** |
| **QUEST DIAGNOSTICS INCORPORATED** | |
| **Defendant(s)** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

**LOCKS LAW FIRM, LLC**
By:  James A. Barry, Esquire
801 N. Kings Highway
Cherry Hill, NJ 08034
Tel:  (856) 663-8200

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
By:  John A. Yanchunis, Esquire [Admitted *Pro Hac Vice*]
     Patrick Barthle, Esquire [To be admitted *Pro Hac Vice*]
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.:  (813) 223-5505

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM AND SININS, P.C.**
By: Michael A. Galpern, Esquire
100 Century Parkway, Suite 305
Mount Laurel, NJ 08054
Tel: (856)596-4100

*Attorneys for Plaintiff and the Putative Class*

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................. 1

II.     OVERVIEW OF THE LITIGATION, PLAINTIFF'S CLAIMS, AND THE
        MEDIATION................................................................................... 2

III.    SUMMARY OF THE PROPOSED SETTLEMENT ........................... 4
        A.  Proposed Settlement Class.......................................................... 4
        B.  Proposed Compensation Terms ................................................... 4
        C.  Settlement Administration .......................................................... 5
        D.  Notice to Settlement Class Members........................................... 6
        E.  Opt-Out Procedure...................................................................... 7
        F.  Objections to the Settlement ....................................................... 7
        G.  Attorneys' Fees, Costs and Expenses, and Service Award......... 8

IV.     LEGAL ARGUMENT ..................................................................... 8
        A.  The Settlement Class Satisfy the Class Certification Requirements ........ 8
            1.  The Settlement Class Meets the Requirements of Rule 23(a) ............. 9
                a.  The Settlement Class is Sufficiently Numerous ............... 9
                b.  The Claims of the Settlement Class Raise Common Questions of Law and
                    Fact................................................................................ 9
                c.  Plaintiff's Claims are Typical of the Settlement Class ................ 10
                d.  Plaintiff and Plaintiff's Counsel Will Adequately Represent the Settlement
                    Class ............................................................................ 12
                e.  The Settlement Class is Ascertainable............................ 13
            2.  The Settlement Class Satisfies Rule 23(b)(3) .................. 13
                a.  Predominance Exists Here ............................................. 13
                b.  Superiority Exists Here ................................................. 14
            3.  Class Counsel Should Be Appointed .............................. 16

        B.  The Proposed Settlement is Fair, Reasonable, and Adequate................. 16
            1.  The Settlement Satisfies Amended Rule 23(e) for Preliminary Approval ........ 16
                a.  Adequacy of Representation and Arm's Length Negotiation.............. 17
                b.  Adequacy of Relief ...................................................... 18
                c.  The Settlement Treats Each Respective Class Member Equitably.............. 22
            2.  The Settlement Also Satisfies Historic Factors for Preliminary Approval......... 22
                a.  The Proposed Settlement is the Result of Vigorous, Informed, Arms-
                    Length Negotiations...................................................... 23
                b.  The Extent of Discovery at the Time the Settlement Agreement was
                    Negotiated Supports Preliminary Approval............................ 24
                c.  The Proposed Settlement is Well Within the Range of Approval ......... 25

i

C.  The Proposed Notice is the Best Notice Practicable...................................................25

**V.   PROPOSED SCHEDULE**........................................................................................26

**VI.   CONCLUSION** .....................................................................................................27

# TABLE OF AUTHORITIES

## *CASES*

*Amchem Prods. v. Windsor*
521 U.S. 591 (1997) ........................................................................................ 8

*Austin v. Pa. Dept. of Corp.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ................................................................ 24

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .............................................................................. 10

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ........................................................................... 11

*Bozak v. FedEx Ground Package Sys., Inc.*,
No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) .......................... 25-26

*Byrd v. Aaron's Inc,*
784 F.3d 154 (3d Cir. 2015) ..................................................................... 9, 13

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ........................................................................ 15

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .............................................................................. 9

*Craig v. Rite Aid Corp.*, No.
4:08-cv-2317, 2013 WL84928 (M.D. Pa. Jan. 7, 2013) *app.dism'd* (3d Cir. Feb. 20, 2013) ..... 20

*Curiale v. Lenox Grp., Inc,*, No.
07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ..................................... 23

*Curry v. AvMed, Inc.*
Case No. 10-cv-24513-JLK, 2014 WL 7801286, (S.D. Fla. Feb. 28, 2014) ............ 19

*Ehrheart v. Verizon Wireless*
609 F.3d 590 (3d Cir. 2010) ........................................................................ 18

*Eisenberg v. Gagnon*
766 F.2d 770 (3d Cir.1985) ........................................................................... 14

*Fischer Bros. v. Phelps Dodge Indus., Inc.*,
604 F. Supp. 446, 452 (E.D. Pa. 1985) ......................................................... 24

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982)...................................................................................................... 10

*Georgine v. Amchem Prods. Inc.*,
83 F.3d 610 (3d Cir. 1996)............................................................................................. 10

*Girsh v. Jepson*
521 F.2d 153 (3d Cir. 1975)........................................................................................... 22

*Gregory v. McCabe, Weisberg & Conway, P.C.*
No. 13-cv-6962, 2014 WL 2615534 (D.N.J. June 12, 2014)................................22-23

*In re Am. Family Enters.*,
256 B.R. 377, 421 (D.N.J. 2000) ................................................................................... 23

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)................................................................................... 19

*In re Anthem, Inc. Data Breach Litig.*,
15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)........................ 19

*In re CertainTeed Fiber Cement Siding Litig.*,
303 F.R.D. 199 (E.D. Pa. 2014)..................................................................................... 21

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2009 WL 5184352 (W.D. Ky. Dec. 22, 2009).............................................................. 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ............................................................. 18

*In re Elec. Carbon Prods. Antitrust Litig.*,
447 F. Supp. 2d 389 (D.N.J. 2006) ............................................................................... 24

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997)........................................................................................ 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)............................................................................... 18, 22, 24

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................................................. 16

*In re Hydrogen Peroxide Antitrust Litig.*
552 F. 3d 305 (3d Cir. 2011).......................................................................................... 14

*In re Ins. Brokerage Antitrust Litig.*
297 F.R.D. 136 (D.N.J. 2013) ........................................................................ 18

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................ 24

*In re Linkedin User Privacy Litig.*
309 F.R.D. 573 (N.D. Cal. 2015) .................................................................. 16

*In re Lucent Techs., Inc.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................... 23

*In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*
No. 08–2177 (DMC), 2012 WL 4482041 (D.N.J. Sept. 25, 2012) ............... 10

*In re Pet Food Prods. Liab. Litig.*,
629 F.3d 333 (3d Cir. 2010) ............................................................................ 8

*In re Premera Blue Cross Customer Data Security Breach Litigation*,
Case No. 3:15-md-2633-SI (W.D. Wash., July 29, 2019) ............................. 20

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ................................................................... 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998) .................................................................... 11, 23

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .................................................................... 15, 18

*Jones v. Commerce Bancorp, Inc.*
2007 WL 2085357 (D.N.J. July 16, 2007) .................................................... 23

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .......................................................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...................................................................................... 25

*New Directions Treatment Servs. v. City of Reading*,
490 F.3d 293 (3d Cir. 2007) .......................................................................... 12

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985) ...................................................................................... 15

*Sanneman v. Chrysler Corp.*
191 F.R.D. 441 (E.D. Pa. 2000) ................................................................. 10

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,
No. 06-cv-04453, 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ...................... 22, 23, 25

*Smith v. Triad of Alabama, LLC*,
2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ............................................ 19

*Stewart v. Abraham*
275 F.3d 220 (3d Cir. 2001) ....................................................................... 9

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................... 8, 14

*Wade v. Werner Trucking Co.*,
No. 10 Civ. 270, 2014 WL 2535226 (S.D. Ohio June 5, 2014) ..................... 26

*Wal-Mart Stores, Inc. v. Dukes*
131 S. Ct. 2541 (2011) ............................................................................... 9

*Weiss v. York Hosp.*
745 F.2d 786 (3d Cir. 1984) ...................................................................... 11

## COURT RULES

Fed. R. Civ. P. 23(a) .......................................................................... 8, 9, 12

Fed. R. Civ. P. 23(a)(1) ............................................................................. 9

Fed. R. Civ. P. 23(a)(2) ......................................................................... 9, 10

Fed. R. Civ. P. 23(a)(3) ....................................................................... 10, 11

Fed. R. Civ. P. 23(a)(3) ........................................................................... 13

Fed. R. Civ. P. 23(b) ................................................................................. 9

Fed. R. Civ. P. 23(b)(3) ................................................................. 13, 14, 15

Fed. R. Civ. P. 23(c)(1)(B) ....................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 26

Fed. R. Civ. P. 23(e) ..................................................................... 16, 17, 25

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 16

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................... 25

Fed. R. Civ. P. 23(e)(1)(B)(i) .................................................................................... 17

Fed. R. Civ. P. 23(e)(1)(B)(ii) ................................................................................... 17

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 16, 17

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................. 22

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................... 21

Fed. R. Civ. P. 23(e)(3) ............................................................................................ 22

## **OTHER SOURCES**

Manual for Complex Litigation, § 21.632 .................................................................. 8

1 NEWBERG ON CLASS ACTIONS 2D, (1985 Ed.) § 3.05 .............................................. 9

4 Newberg on Class Actions § 13:58 (5th ed.) ........................................................ 16

Plaintiff Grant Morrow respectfully submits this Memorandum of Law to support his motion for: (1) preliminary approval of the Settlement[1] between Plaintiff and Defendant; (2) preliminary certification of the Settlement Class for settlement purposes only; (3) appointment of Class Counsel for the Settlement Class; (4) appointment of Grant Morrow as the Settlement Class Representative; (5) appointment of Heffler Claims Group as the Claims Administrator (6) approval of the form and method of Notice as fair, reasonable and adequate and consistent with Fed. R. Civ. P. 23(c) and due process; and (7) setting of the date for the Final Settlement Hearing.

## I.    INTRODUCTION

This case arises out of a data breach in which approximately 34,000 patients of Defendant, Quest Diagnostics Incorporated ("Quest"), had their sensitive medical data obtained by an unauthorized third party (hereinafter, "the Incident"). Plaintiff filed this matter on December 21, 2016, in New Jersey state court. (ECF No. 1 at 3). It was removed to this Court on February 13, 2017. (*Id.*). Plaintiff alleges that Quest failed to safeguard his Personal Identifying Information (PII) and Protected Health Information (PHI), (PII and PHI referred to collectively as "Private Information") resulting in it being the subject of the Incident.

Following briefing on a motion to dismiss, related jurisdictional discovery, and a dispute regarding bifurcated discovery which resulted in an order from United States Magistrate Judge James B. Clark III, this matter was referred by the Court to mediation with Mediator Sheryl M. Goski (ECF No. 79). At mediation and with the assistance of Ms. Goski, the parties were able to reach a resolution of the case on a class basis. The parties now seek preliminary approval of the resulting agreement, among other relief, which provides important relief for Class Members.

---

[1] All terms with initial capitalization are defined terms set forth in the Settlement Agreement, which is attached hereto as **Exhibit 1**.

## II.     OVERVIEW OF THE LITIGATION, PLAINTIFF'S CLAIMS, AND THE MEDIATION

Plaintiff filed this matter on December 21, 2016, in New Jersey state court and it was removed to this Court on February 13, 2017.  (ECF No. 1 at 3).  Quest moved to dismiss the complaint.  (ECF No. 9).  In order to respond to the motion, Plaintiff sought and, following further briefing and a hearing on the matter, was granted jurisdictional discovery.  (ECF Nos. 13–16, 22, 23, 26). That discovery included document production and depositions of Quest's Chief Information Security Officer, David Dulong, and Quest's Director of Corporate Security, John Blaha.  *See* Declaration of John Yanchunis at ¶ 14, attached hereto as **Exhibit 2**, referred to hereinafter "Yanchunis Decl."

On October 5, 2017, Defendant's motion was administratively terminated, with leave to refile following completion of jurisdictional discovery.  (ECF No. 34).  The motion was renewed in November, (ECF No. 36), to which Plaintiff sought and was granted leave to file an Amended Complaint, (ECF Nos. 39, 44).  A second motion to dismiss was filed in January 2018 (ECF No. 50), and briefing followed, (ECF Nos. 52, 53, 59).

While the second motion pended, the parties disputed Quest's request for bifurcated discovery.  (ECF No. 67).  In May 2018, following a hearing, Magistrate Judge Clark denied the request for bifurcated discovery.  (ECF Nos. 71, 72).  Quest thereafter appealed Judge Clark's decision, (ECF No. 73), and full briefing ensued, (ECF Nos. 74, 76).

On July 19, 2018, the Court held a Status Conference call, following which this matter was referred to mediation and the pending motions were terminated without prejudice.  (ECF No. 79).

On September 24, 2018, the parties engaged in a full day mediation with the assistance of mediator Sheryl Goski.  During the mediation, and in the days immediately following, the parties

agreed to the framework of the class resolution.  Yanchunis Decl. ¶ 17.  Nonetheless, specifics regarding certain aspects of the class resolution and commencement of discussions regarding attorneys' fees and costs remained outstanding. Following extended negotiations between the parties, a settlement conference was scheduled with Magistrate Judge Clark for February 27, 2019, in order to address the outstanding issues between the parties..  (ECF No. 88).  Prior to the scheduled conference, however, agreement was reached on the material terms of the settlement, the Court was so informed, and this matter was administratively closed pending submission of this approval motion.  (ECF No. 91).

In accord with the parties' negotiations, and in order to efficiently effect the settlement, Plaintiff has requested leave to file a Second Amended Complaint, which omits claims and allegations previously sealed, so that notice and administration of the settlement can proceed more smoothly.  *See* (ECF No. 104)

In the proposed Second Amended Complaint (ECF No. 104-3), Plaintiff alleges claims for, *inter alia*, negligence, breach of contract, invasion of privacy, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*. ("CFA").

The Settlement provides real, substantive relief for Class Members.  Specifically, the Settlement Class will include all persons residing in the United States whose personal information was obtained by the unauthorized third party in the Incident.  S.A. ¶ 25.  Defendant will pay One Hundred Ninety-Five Thousand Dollars ($195,000.00) to create the Settlement Fund.  S.A. ¶ 33. The Settlement Fund will be used to pay Settlement Class Members who submit valid and timely Claims, the Class Representative Service Award, Attorneys' Fees and Expenses, and any taxes due on the Settlement Fund.  S.A. ¶ 34.  All Settlement Administration Charges, including those arising from implementation of the Notice Program, dissemination of the Notice, and

administration of the claims and Settlement, will be paid for by Defendant separate and apart from the Settlement Fund.  S.A. ¶¶ 24, 34.

Class Members may make claims for monetary losses resulting from the Incident, and Settlement Class Members whose HIV test results were obtained during the Incident may further submit a claim to be paid Seventy-Five Dollars ($75.00) without a requirement of establishing monetary loss.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.  Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class as defined in the Settlement Agreement:

> [A]ll persons residing in the United States whose personal information was obtained by an unauthorized third party in the Incident.  Excluded from the Settlement Class are the judge and magistrate judge presiding over this matter, any members of their judicial staff, the officers and directors of Defendant, and persons who timely and validly request exclusion from the Settlement Class[.]

S.A. ¶ 25.

### B.  Proposed Compensation Terms

The Settlement provides two levels of monetary relief: reimbursement of monetary losses as well as separate payments for those whose HIV test results were disclosed.  Specifically, first, Settlement Class Members who submit documentary evidence establishing actual monetary loss resulting from the Incident will be reimbursed for the loss established, up to a limit of Two Hundred Fifty Dollars ($250.00) per claimant.  S.A. ¶ 36(b)(i).  Second, Settlement Class Members whose HIV test results were disclosed due to the Incident who make a claim will be paid Seventy-

Five Dollars ($75.00) without a requirement of establishing any monetary loss.  S.A. ¶ 36(b)(ii). Eligible Settlement Class Members may receive distributions pursuant to both provisions, for a maximum payment of Three Hundred Twenty-Five Dollars ($325.00).

### C.    Settlement Administration

Defendant will pay for the costs of claims administration and class notice, separate and apart from the Settlement Fund and will not reduce the relief provided for the Settlement Class. S.A. ¶ 34.[2]

The parties have agreed to request that the Court appoint Heffler Claims Group as Settlement Administrator.  Once approved by the Court, the Settlement Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.  The Settlement Administrator will cause the Settlement Class Notice Program to be effected in accordance with the terms of the Settlement and any orders of the Court.  The Settlement Administrator may request the assistance of the parties to facilitate providing notice and to accomplish such other purposes as may be approved by Defendant and Class Counsel.  The parties shall reasonably cooperate with such requests.

The Settlement Administrator will also administer a dedicated settlement website ("the Settlement Website") and will cause the Settlement Website to be updated to provide information and relevant documents related to this Settlement, including but not limited to, the following: applicable deadlines; Class Notice; a downloadable Claim Form that may be submitted by U.S. Mail; FAQs and answers; orders of the Court pertaining to the Settlement; the Settlement Agreement; a toll-free telephone number; and contact address for questions.

---

[2] However, if any funds remaining following distribution of all claimed amounts, the "Residual Settlement Payments Fund" will be used to offset settlement notice and administration costs paid or incurred.  S.A. ¶ 36(f).

To make a claim, a Settlement Class Member must complete and submit a valid, timely, and sworn Claim Form.  Claim Forms can be submitted either online or by U.S. mail and must be submitted or postmarked no later than the Claim Deadline.

### D.   Notice to Settlement Class Members

The Settlement provides for (1) direct notice via U.S. Mail to the Settlement Class using the addresses currently maintained by Quest, and (2) provision of notice on the Settlement Website by posting the Long Form Notice, the Summary Notice, and relevant documents and information. S.A. ¶ 48.  Specifically, the Settlement Administrator will send the Summary Notice via U.S. Mail to all Settlement Class Members for whom Defendant can ascertain a mailing address from its records with reasonable effort.  In preparation for the notice mailing, the Settlement Administrator will review the Class List, clean the data as necessary and run the data the United States Postal Service's ("USPS") National Change of Address ("NCOA") database.  Any address updates received from the NCOA search will be incorporated into the Class List and the applicable record(s) updated accordingly

For any mailed Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as a skip-trace process) and re-mail the Summary Notice to the extent updated addresses are identified.  S.A. ¶ 48(a); Settlement Administrator Protocol §2.  The Settlement Administrator will also publish the Long Form Notice, the Summary Notice, and other relevant documents and information on the Settlement Website on or before the Notice Date; and will provide the URL address of the Settlement Website in the Long Form Notice and the Summary Notice.

Within 30 Days following entry of the Preliminary Approval Order, the Settlement Administrator shall mail the Notice to all Settlement Class Members by First-Class United States

Mail. S.A. ¶¶ 14, 48.  Class Members will have 180 days from the Notice Deadline to file their claims.  S.A. ¶ 2.

### E.      Opt-Out Procedure

Each member of the Settlement Class shall have the right to opt-out and not participate in the Settlement Agreement.  S.A. ¶ 49.  To opt-out, Class Members need only provide the Settlement Administrator with a written notification containing the individual's name and address; a statement that he or she wants to be excluded from the Settlement Class; and the individual's signature. Such written notification must be postmarked no later than the Opt-Out Deadline, which is 45 days after the Notice Deadline.  S.A. ¶ 17, 49.

### F.      Objections to the Settlement

Any Settlement Class Member who wishes to object to the proposed Settlement need only (i) submit the objection to the Court by either filing it through the Court's Case Management/Electronic Case Files ("CM/ECF") system, filing the written objection in person at any location of the United States District Court for the District of New Jersey, or by mailing the objection to the Court; (ii) the objection must be filed or postmarked on or before the objection deadline provided in the Court's Preliminary Approval Order; and (iii) be mailed to Lead Class Counsel and Defendant's counsel and postmarked by no later than the Objection Deadline.

Valid objections should, among other things, (i) set forth the Settlement Class Member's full name, address, email address, and telephone number; (ii) contain the Settlement Class Member's original signature; (iii) provide an explanation of the basis upon which the objector claims to be a Settlement Class Member; (iv) set forth all grounds for the objection, accompanied by any legal support for the objection; (v) provide a list of any persons who will be called to testify at the Fairness Hearing in support of the objection; and (vi) identify counsel representing the

objector, if any. S.A. ¶ 50. The Settlement proposes an objection deadline of 45 days after the Notice Deadline.  S.A. ¶ 16.

### G.  Attorneys' Fees, Costs and Expenses, and Service Award

At least fourteen (14) days prior to the Objection Deadline, Class Counsel will ask the Court to approve an award of Attorneys' Fees, Costs and Expenses, and a Service Award for Plaintiff, not to exceed a combined total of Ninety-Five Thousand Dollars and No Cents ($95,000.00). S.A. ¶ 58.  As will be further explained in the Fee Motion, Class Counsel's lodestar far exceeds this sum and the request will be imminently reasonable.  Yanchunis Decl. ¶ 26.

### IV.   LEGAL ARGUMENT

### A.  The Settlement Classes Satisfy the Class Certification Requirements

Before assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here. Fed. R. Civ. P. 23(a). The Third Circuit has approved class certification in light of settlement where the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). *See Sullivan v. DB Invs., Inc*., 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010). However, in the settlement context, the Court need not consider whether the case would present intractable management problems because there will be no trial.  *Sullivan*, 667 F.3d at 322, n.56.

In the Third Circuit, courts have recognized an additional class certification perquisite, which is that the class must be readily "ascertainable" based on objective criteria. Once the party seeking class certification has satisfied the prerequisites of Rule 23(a) and ascertainability, the

party must demonstrate at least one of the three requirements of Rule 23(b). *Byrd v. Aaron's Inc*, 784 F.3d 154, 165 (3d Cir. 2015). Because the proposed Settlement Class meets all applicable requirements of Rule 23, it should be certified.

### 1.   <u>The Settlement Class Meets the Requirements of Rule 23(a)</u>

Plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### a)   **The Settlement Class is Sufficiently Numerous.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no bright-line threshold, a class of forty has been presumed to be numerous. *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same) (*citing* 1 NEWBERG ON CLASS ACTIONS 2D, (1985 Ed.) § 3.05). As noted above, the Incident impacted the Private Information of approximately 34,000 consumers, and thus the proposed Settlement Class contains approximately that many members—clearly meeting the numerosity requirement.

### b)   **The Claims of the Settlement Class Raise Common Questions of Law and Fact.**

Rule 23(a)(2) requires there be "questions of law or fact common to the class." The Rule 23(a)(2) "commonality" requirement is satisfied if there is *at least one* common question of fact or law between the Plaintiff's claims and those of the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). As such, "the United States Court of Appeals for the Third Circuit

'has recognized that courts have set a low threshold for satisfying this requirement.'" *In re Merck & Co. Inc., Vytorin/Zetia Sec. Litig.*, No. 08–2177 (DMC), 2012 WL 4482041, at *3 (D.N.J. Sept. 25, 2012) (quoting *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 627 (3d Cir. 1996)). "Commonality" under Rule 23(a)(2) does not require that all class members have identical claims, and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Instead, "[c]ommonality exists when proposed class members challenge the same conduct of the defendants." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446-47 (E.D. Pa. 2000).

Here, there are not one, but multiple, questions of fact and law that are common to the Settlement Classes. Here, the critical issues posed by this litigation are: (1) whether the Private Information of Plaintiff and the Class Members was obtained by a third party without authorization; (2) whether Defendant had a duty to protect the Private Information of Plaintiff and Class Members from disclosure; and (3) whether Plaintiff and Class Members were injured by Defendant's failure to protect their Private Information.  The central question behind every claim in this litigation is whether Defendant adequately secured its consumers' Private Information.  The answer to that question depends on common evidence that does not vary from class member to class member, and so can be fairly resolved—whether through litigation or settlement—for all class members at once. These are common questions with common proof that can be answered on a Class-wide basis. Given the presence of these common questions central to the litigation, Rule 23(a)(2)'s requirements for the existence of common questions of fact or law are met.

### c) Plaintiff's Claims are Typical of the Settlement Class.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). The "typicality requirement is

designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 311 (citations omitted). Thus, "[t]o evaluate typicality, we ask whether the named plaintiff's claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the Plaintiff are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (citations omitted). Rule 23(a)(3) is satisfied where a named plaintiff can "show that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984) (citation omitted). Thus, "factual variations will not defeat certification where the various claims arise from the same legal theory," unless there is a danger regarding the named plaintiff that "the unique circumstances or legal theory will receive inordinate emphasis" so the common claims "will not be pressed with equal vigor or will go unrepresented." *Id.*

Mr. Morrow's claims are not only similar, but virtually identical, to the claims of the Settlement Class. Indeed, Plaintiff's claims and each of the Class Members' claims are predicated on the same alleged conduct by Defendant – failure to protect their Private Information from cyber criminals. Defendant's liability for the alleged release of Private Information to cybercriminals and the resulting damage to each Settlement Class Member does not depend on the individualized circumstances of Class members. Rather, the Second Amended Complaint alleges that Defendant's conduct led to the release of the Private Information was unlawful and gives rise to liability as to all persons who, like Plaintiff, had their Private Information improperly exposed.  In order to prevail, therefore, Plaintiff and each Class member will be required to make the same factual

presentation and legal argument with respect to the common questions of liability, thereby establishing typicality.

### d) **Plaintiff and Plaintiff's Counsel Will Adequately Represent the Settlement Class.**

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit has consistently ruled that the measure of adequate representation is dependent upon two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Here, adequacy is plainly met.

Mr. Morrow is an adequate class representative because he does not have interests antagonistic to the Settlement Class Members as his claims are based on the same factual allegations and claims as those of the Class. Furthermore, Mr. Morrow has engaged in this litigation extensively, responding to interrogatories, requests for admission, and document requests, and being engaged in the decision as to whether to ultimately agree to the terms of the Settlement before the Court. Yanchunis Decl. ¶ 27.

Likewise, proposed Class Counsel are highly experienced in consumer class actions and other complex litigation–including data breach cases–and are thus able to effectively prosecute the claims of the Class. (*See* resumes of Plaintiff's Counsel attached as Exhibit A to Yanchunis Decl.). These firms possess extensive experience prosecuting class actions, particularly data breach and data disclosure cases, throughout the nation. Proposed Class Counsel and their firms are greatly experienced in litigating and resolving data breach class actions and have developed a strong understanding of the strengths and weaknesses present in such cases and what type of settlement might be fair, reasonable, and adequate under the circumstances. Proposed Class Counsel

thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiff in this case.

Accordingly, Plaintiff and his Counsel satisfy the requirements of Fed. R. Civ. P. 23(a)(4).

### e)     The Settlement Class is Ascertainable

In addition to the Rule 23 requirements, courts in the Third Circuit also analyze the judicially created doctrine of ascertainability when evaluating whether to certify a class.  A class is ascertainable if "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. Here, the class is defined with reference to objective criteria and the determination of whether someone is within the Settlement Class is administratively feasible because it can be – and has been obtained – based on the Defendant's records.   The identity—and address—of each Settlement Class Member is obtainable from Defendant's records, and, in fact, will be provided to the Settlement Administrator within three (3) business days after entry of the Preliminary Approval Order.  S.A. ¶ 44.

### 2.     The Settlement Class Satisfies Rule 23(b)(3)

Under Rule 23, once the threshold requirements of subsection (a) have been satisfied, the party seeking class certification must then demonstrate that the requirements of subsections (b)(1), (2), or (3) are satisfied. Plaintiff is seeking certification of the Settlement Class under Rule 23(b)(3), which requires a party show that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

### a)     Predominance Exists Here.

The predominance requirement for class actions under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . Issues

13

common to the class must predominate" over any questions affecting only individual members. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305, 310-11 (3d Cir. 2011) (citations omitted). However, the mere "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985). Instead, the reviewing court should look to whether "the efficiencies gained by class resolution of the common issues [will be] outweighed by individual issues presented for adjudication." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 511 (D.N.J. 1997). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, *supra*, 667 F.3d at 298.

Common questions represent a significant aspect of this case. Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiff and Class Members and whether Defendant's failure to prevent disclosure of such Private Information constitutes a breach of privacy. Plaintiff's liability case depends, first and foremost, on whether Defendant used reasonable data security to protect the Private Information.  That question can be resolved using the same evidence for all class members—and Settlement Class Members' claims for compensatory relief are founded upon common legal theories to which that evidence would be applied—thus, these are the precise type of predominant issues that makes a class-wide adjudication worthwhile.  Accordingly, this prong of Rule 23(b) is satisfied.

### b)   Superiority Exists Here.

Rule 23(b)(3)'s "superiority" requirement asks the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of

adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (citations omitted). In determining superiority, a court may consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, the superiority requirement is satisfied. Because the case is settled, no manageability issues will arise. *Sullivan*, 667 F.3d at 306.

Specifically, first, where, as here, "there are a potentially large number of class members" with "little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit," (*Warfarin Sodium*, 391 F.3d at 534 (citation omitted)), a class action is clearly superior to any other method of proceeding. *See In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 351 (D.N.J. 1997) (finding class treatment preferred when "the recovery being sought by each of the Plaintiffs is not sufficiently large to render individualized litigation a realistic possibility") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.").

As a practical matter, the issues here cannot be resolved through individual trials or settlement negotiations: the amount at stake for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. A class action is not only the superior method of adjudicating consumer claims arising

15

from this data breach, it is the *only* method practicable—just as in other data breach cases where a class wide settlement has been approved.  *See, e.g., In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 585 (N.D. Cal. 2015); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6–7 (W.D. Ky. Dec. 22, 2009).  Accordingly, the class action mechanism is the superior method of adjudication for the monetary claims as to the Classes.

### 3.     Class Counsel Should Be Appointed

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." The factors listed under Rule 23(g) all favor appointment of proposed Class Counsel. As further explained above in section IV.A.1.d), Class Counsel have worked extensively in identifying, investigating and litigating the claims. Class Counsel have expended and will continue to expend the necessary resources to represent the Class.  For these reasons proposed Class Counsel should be appointed.

### B.  The Proposed Settlement Is Fair, Reasonable, and Adequate

Recent revisions to Rule 23(e)—effective on December 1, 2018—standardize the analysis needed at the preliminary approval stage.  The Advisory Committee also noted, however, that "[t]he goal of this amendment is not to displace any factor" previously considered in any given Circuit. *See also, e.g.*, 4 Newberg on Class Actions § 13:58 (5th ed.) ("[V]arious pre-existing legal factors not captured by amended Rule 23(e)(2)'s list of factors may prove relevant in particular cases.").  Under either set of standards, the Settlement here is fair, reasonable, and adequate and should be preliminarily approved.

### 1.  The Settlement Satisfies Amended Rule 23(e) for Preliminary Approval

Amended Rule 23(e)(1) provides that notice should be given to the class, and hence,

preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes.  As explained above in section IV.A, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). The Court will "likely be able to" finally approve this Settlement.

### a.    Adequacy of Representation and Arm's Length Negotiation

As an initial matter, and explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* section IV.A.1.d).  Moreover, the settlement was negotiated at arm's length using the Court appointed mediator, Sheryl Goski.  Yanchunis Decl. ¶¶ 17, 36. Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

**b.** **Adequacy of Relief**

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded.  Plaintiff's claims would still need to survive a motion to dismiss, succeed on a motion for class certification, and likely survive a motion for summary judgment.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement: "[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin*, 391 F.3d at 535; *see also In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) ("'The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

This is not only a complex case, but it is in an especially risky field of litigation.  *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").  Data breach cases continue to be among the most risky and uncertain of all class action litigation and certification is rare. Through the Settlement, Plaintiff and Class members gain significant benefits without having to face further risk.

While Plaintiff believes he would prevail on a motion to dismiss and on class certification, there is little directly analogous precedent to rely upon. Class certification has been denied in other

consumer data breach cases and it was only recently that the first litigation class was certified in a consumer data breach case.  *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017).  The lack of direct precedent creates an additional risk in achieving and maintaining class action status throughout trial and even appeal.  While Plaintiff feels he would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not certainty.  Additionally, any potential certification would be subject to later appeal and potential reversal.  Also, the cost of trial and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief.

This Settlement falls well within the range of reasonable settlements approved by other courts.

For example, *In re Anthem, Inc. Data Breach Litig.* was a case involving disclosure of, among other things, similar PHI/healthcare related information as at issue here.  The *Anthem* settlement class encompassed 79,150,325 members.  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 307 (N.D. Cal. 2018).  The total common fund for that settlement was $115 million, *id.* at 318. That sum included attorneys' fees of $31,050,000.00 and costs of $2,005,068.59, as well as $23 million for settlement administration, leaving the final amount to be distributed to the class at just under $82 million, or approximately $1.09 per class member.  *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3960068, at *8, *34 (N.D. Cal. Aug. 17, 2018).

Similarly, in *Curry v. AvMed, Inc.*, the court approved a class action settlement arising out of the theft of personal information including PHI and Social Security numbers that included a settlement fund of $2,250,000 (exclusive of attorneys' fees) for a class of approximately 1.2 million, yielding for a per capita recovery of around $1.88 per class member.  Case No. 10-cv-24513-JLK, 2014 WL 7801286, at *3 (S.D. Fla. Feb. 28, 2014).

Most recently, a court granted preliminary approval to a settlement agreement involving a data breach at Premera Blue Cross that involved the compromise of confidential information (including PHI) of approximately 10.6 million people.  *In re Premera Blue Cross Customer Data Security Breach Litigation*, Case No. 3:15-md-2633-SI (W.D. Wash., July 29, 2019).  That settlement includes payment of $10 million in cash and credit monitoring benefits to class members, plus changes made to Premera's cybersecurity practices that Plaintiffs' expert opined were worth $11,872,000 to settlement class members, for a total of approximately $21,872,000 in benefits to settlement class members, yielding a per capital recovery of $2.06 per class member. *See id.*

Here, the total common fund is $195,000.00, S.A. ¶ 33, with a class size of approximately 34,000 people.  Costs of administration are separately funded by Defendant and will not reduce the Settlement Fund prior to claim payments.[3]  Even assuming the Court awards the full amount of potential attorney's fees, costs, and expenses and Service Award of $95,000.00, S.A. ¶ 58, the remaining amount in the Settlement Fund amounts to $2.94 per class member.

Furthermore, the substantial and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation.

In contrast, if this case were to continue, Plaintiff and the Settlement Class would face a number of difficult challenges, including surviving a motion to dismiss, obtaining class certification and maintaining certification through trial and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this matter. This is another indication that the proposed Settlement is fair, reasonable, and adequate and should be approved. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at 9 (M.D. Pa. Jan. 7, 2013), *appeal*

---

[3] In the event excess funds remain following payments to the Settlement Class, the "Residual Settlement Payments Fund" will be used to offset settlement notice and administration costs paid or incurred.  S.A. ¶ 36(f).

*dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place substantial drain on judicial resources"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact…. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

The Settlement relief will be distributed via a straight-forward claims process utilizing an easy to understand and use claim form. SA § IV; Settlement Administration Protocol §§ 5-6. Checks for approved claims will then be mailed and postmarked within 60 days of the Effective Date. S.A. ¶ 36(b).

Attorneys' fees, costs, and expenses were negotiated separate, apart, and long after reaching agreement on the Class relief.  Yanchunis Decl. ¶ 17.  Quest has agreed to pay up to $95,000.00 total for attorneys' fees, costs, and expenses as well as the Service Award, however the awarded amount remains wholly in the Court's discretion and no order of the Court, or modification, reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court will affect whether the judgment is final or constitute grounds for cancellation or termination of this Settlement Agreement. SA § X.  Attorneys' fees, costs, and expenses, in whatever amount set by the Court, will be paid within three days of Defendant's funding of the Settlement Fund following the Effective Date. S.A. ¶ 36(a).  And, as will be explained in Plaintiff's Motion for Attorneys' Fees,

an award of the full $95,000.00 requested will still be far less than Class Counsel's lodestar amount. Yanchunis Decl. ¶ 26.[4]

        **c.**        **Settlement Treats Each Respective Class Member Equitably**

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement for their losses. Moreover, those Class Members' whose HIV testing results were disclosed can receive additional compensation given the especially sensitive nature of that information.

        **2.**  **The Settlement Also Satisfies Historic Factors for Preliminary Approval**

Historically, preliminary approval of a settlement does not require a definitive determination of the fairness of a proposed settlement. *In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that "the preliminary determination establishes an initial presumption of fairness"); *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-04453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (same). Rather, a definitive determination of the fairness, reasonableness, and adequacy of a settlement is made at a Final Settlement Hearing. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 631, 638 (E.D. Pa. 2003).[5] "Preliminary approval is not binding, and it is granted unless

---

[4] There are no Rule 23(e)(3) agreements to be disclosed here. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

[5] The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). "The Court need not, however, consider the *Girsh* factors in the context of" a motion for preliminary approval of a settlement." *Gregory v.*

a proposed settlement is obviously deficient." *Jones*, 2007 WL 2085357, at *2. To grant preliminary approval, a court must find that: "(1) the parties' negotiations occurred at arm's length; (2) there was sufficient discovery; [and] (3) the proponents of the settlement are experienced in similar litigations."[6] *Smith*, 2007 WL 4191749, at *1. Upon such findings, a settlement agreement is entitled to a presumption of fairness and should be granted preliminary approval. *Id.*

Such approval is a matter within the discretion of the district court. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 299 (3d Cir. 1998); *In re Lucent Techs., Inc.*, 307 F. Supp. 2d 633, 641 (D.N.J. 2004) (a court enjoys considerable discretion to determine whether a proposed settlement satisfies Rule 23 standards). In making this determination, the Court should give deference to the recommendations of experienced counsel who have engaged in arms-length settlement negotiations. *See In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("significant weight should be given 'to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of 'good faith, arms-length negotiations.'") (citations omitted).

Finally, the proposed Settlement is entitled to a presumption of fairness because it was negotiated at arm's-length before an experienced mediator and following discovery, and Plaintiff's Counsel are highly experienced in similar types of litigation, as explained below.

a)  **The Proposed Settlement is the Result of Vigorous, Informed, Arms-Length Negotiations.**

Preliminary approval analysis "often focuses on whether the settlement is the product 'arms-length negotiations.'" *Curiale v. Lenox Grp., Inc*,, No. 07-1432, 2008 WL 4899474, at *4

---

*McCabe, Weisberg & Conway, P.C.*, No. 13-cv-6962, 2014 WL 2615534, at 2 n.6 (D.N.J. June 12, 2014).

[6] A fourth factor, the number of objections to the settlement, is not properly evaluated until the final approval stage. *Smith*, 2007 WL 4191749, at *1 n. 3

(E.D. Pa. Nov. 14, 2008).  As noted above, here, the Settlement Agreement is the result of extensive negotiations conducted before mediator Sheryl M. Goski during an all-day mediation on September 24, 2018. Prior to the mediation, the parties submitted comprehensive confidential mediation statements such that the mediator was fully informed of all of the factual and legal issues.  During the mediation, Plaintiff's Counsel and counsel for Defendant vigorously advocated their respective positions, and all parties were prepared to litigate the case fully if no settlement was reached.

Based on their experience, Plaintiff's Counsel believe this Settlement provides significant benefits to the Settlement Class, avoids the risks and delays associated with continued litigation, and is in the best interest of members of the Settlement Classes. *Fischer Bros. v. Phelps Dodge Indus., Inc*., 604 F. Supp. 446, 452 (E.D. Pa. 1985) (the "professional judgment of counsel involved in the litigation is entitled to significant weight" when evaluating proposed settlement); *Austin v. Pa. Dept. of Corp*., 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) (stating that significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class"). The parties' arm's-length negotiations fully support a finding that the proposed Settlement warrants preliminary approval.

> **b)    The Extent of Discovery at the Time the Settlement Agreement Was Negotiated Supports Preliminary Approval.**

The stage at which settlement occurs demonstrates "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Gen. Motors. Corp*., 55 F.3d at 813.  "Where [the] negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent."  *In re Elec. Carbon Prods. Antitrust Litig*., 447 F. Supp. 2d 389, 400 (D.N.J. 2006) (*citing In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003)).  Significant discovery undertaken prior to reaching a settlement supports a

finding that the settlement is within the range of reasonableness.  *Smith, supra,* 2007 WL 4191749, at *2-3 (D.N.J. Nov. 21, 2007).

Here, Plaintiff's Counsel undertook discovery that included depositions of Defendant's Chief Information Security Officer, David Dulong, and Quest's Director of Corporate Security, John Blaha, along with related document production.   Yanchunis Decl. ¶¶ 14, 34.   These depositions gave counsel sufficient information regarding the Incident, Defendant's response thereto and investigation thereof, and the information exposed as a result of the Incident.  This discovery allowed Plaintiff's Counsel to be informed on all material issues before negotiating a settlement on behalf of the Class.

### c) The Proposed Settlement Is Well Within the Range of Approval.

The Settlement merits preliminary approval under the "range of reasonableness" standard in light of the fact that it provides an excellent result for members of the Settlement Class. Under the Settlement Agreement, members will receive payments without suffering the delays and uncertainty of further litigation, or the need to engage in extended proof of causation.

The Settlement is well within in the range of previously-approved data breach settlements concerning PHI.  *See supra* § IV.B.1.b.

### C. The Proposed Notice Is the Best Notice Practicable

After preliminary approval, Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ."  Fed. R. Civ. P. 23(e)(1)(B).  The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bozak v. FedEx Ground Package Sys., Inc.*,

No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class"); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the . . . Class Members of all material elements of the Litigation and the Agreement").

The Notice Program in the Settlement Agreement is the best notice practicable under the circumstances as required under Rule 23(c)(2)(B). The Settlement contemplates providing direct notice to the Settlement Class by U.S. mail using the addresses currently maintained by Quest. *See* S.A. ¶ 48; Settlement Administration Protocol § 2. Further, the contents of the Notice advise Settlement Class Members of the essential terms of the Settlement, the rights of Settlement Class Members to share in the recovery, the rights of Settlement Class Members to request exclusion from the Class or to object to the Settlement, and will provide specifics on the date, time, and place of the final approval hearing. Thus, the Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notice also contains information regarding Proposed Class Counsel's fee application, Class Representative's Service Award, and the proposed plan for allocating the Settlement proceeds among Settlement Class Members. Thus, the form and manner of notice proposed under the Settlement fulfill all the requirements of Rule 23 and due process. Accordingly, the Court should approve the proposed form and manner of notice.

## V.    PROPOSED SCHEDULE

In connection with the preliminary approval of the Settlement, Plaintiff asks the Court to set a date for the Final Approval Hearing, dates for filing papers relating to final approval and

attorneys' fees, dates for sending notice to the Settlement Class, and deadlines for any requests for exclusion or objections. Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Notice Date | 30 days from entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 45 days after Notice Deadline |
| Claims Deadline | 180 days after Notice Date |
| Deadline for Class Counsel's Application for Attorneys' Fees and Service Awards for Settlement Class Representatives | 14 days before Objection Deadline |
| Deadline for Motion in Support of Final Approval of Settlement | 14 days before Objection Deadline |
| Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for Attorneys' Fees and Expenses and for Service Award. | 7 days prior to the Fairness Hearing |
| Final Approval Hearing | No earlier than 110 days after entry of the Preliminary Approval Order |

## VI.   CONCLUSION

For the foregoing reasons, the Court should enter an order (i) provisionally certifying the proposed Settlement Class; (ii) appointing Plaintiff as Settlement Class Representative of the Settlement Class; (iii) appointing John A. Yanchunis and Patrick Barthle of Morgan & Morgan Complex Litigation Group, James Barry of the Locks Law Firm, LLC, and Michael Galpern of Javerbaum Wurgaft Hicks Kahn Wikstrom and Sinins, P.C. as "Class Counsel" for the Settlement Class; (iv) preliminarily approving the Settlement of this action; (v) approving the timing, form, content, and manner of the giving of notice of the Settlement to the members of the Settlement

Class; (vi) appointment of Heffler Claims Group as the Settlement Administrator, and (vii) setting

a hearing date for the Final Approval Hearing.

Dated: October 15, 2019

Respectfully submitted,
**LOCKS LAW FIRM, LLC**


/s/ James A. Barry
James A. Barry, Esq.
801 N. Kings Highway
Cherry Hill, NJ 08034
Tel:  (856) 663-8200
Fax:  (856) 661-8400


**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
John A. Yanchunis, Esq. [Admitted *Pro Hac Vice*]
Patrick Barthle, Esq. [To be admitted *Pro Hac Vice*]
201 Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.:  (813) 223-5505
Fax:   (813) 334-5402

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM**
**AND SININS, P.C.**
Michael A. Galpern, Esq.
100 Century Parkway, Suite 305
Mount Laurel, NJ 08054
Tel: (856)596-4100
Fax: (856)702-6640

*Attorneys for Plaintiff and the Putative Class*